## L. E. STARKEY V. WESTERN UNION TELEGRAPH COMPANY.

### Decided January 18, 1909.

**1.—Telegraph Company—Office Hours.**

A telegraph company owes no duty to the public to accept for transmission or to make delivery of telegrams tendered after the offices at initial point and destination are closed at night under a reasonable rule as to office hours.

**2.—Same—Contract—Pleading.**

Where a message was delivered to a telegraph company after office hours, and in a suit to recover for failure to transmit and deliver the sender alleged that a special contract was made with the agent to promptly convey and deliver it at once, and that defendant company promised to convey and deliver within a reasonable time, and that a reasonable time under the circumstances was only an immediate and very prompt delivery, the right to recover was properly restricted to a breach of the special contract for immediate transmission and delivery.

**3.—Appeal—Briefs—Statements under Assignments.**

Grouped assignments of error not followed by any statements will not be considered.

**4.—Same—Objections to Evidence.**

Assignments of error based on the action of the court in sustaining objections to certain answers in a deposition, setting out the interrogatories but failing to set out the answers or refer to bills of exception, cannot be considered.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*A. C. Van Velzer,* for appellant.

*Hume, Robinson & Hume,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—Appellant, L. E. Starkey, brought this suit against the appellee, Western Union Telegraph Company, for damages for failure to make delivery of a telegraphic message addressed to a physician announcing the serious illness of his wife and requesting the physician to come at once. He alleged, in substance, on the 23d day of March, while residing near the village of Sheldon, he, through his agent, James Cromer, about 7 o'clock p. m., delivered to defendant for transmission and delivery to Doctor Cutler, residing at Crosby, six miles distant, a message in substance as follows: "Please come at once. My wife is getting worse." That defendant's agent was then notified that plaintiff's wife was extremely ill, and that "Upon the delivery of said message to defendant's agent at

Sheldon for said purpose, the defendant promised to convey and deliver said message to Dr. Culter, at Crosby, within a reasonable time thereafter; . . . and plaintiff says that a reasonable time for such delivery, under the circumstances, was only an immediate and very prompt delivery thereof to Dr. Culter at Crosby, as the purpose of said message, as known to defendant and its said agent, was to obtain medical treatment for plaintiff's wife just as soon as possible, of which medical treatment plaintiff's wife was then in urgent and sore need, as defendant and its agent and servant then well knew. And defendant, by said agent, then and there undertook and promised the messenger and employe of plaintiff and promised plaintiff that defendant would transmit, convey and deliver said message to Dr. Culter, at Crosby, immediately after he received the same at Sheldon from plaintiff's messenger, James Cromer;" that defendant failed to deliver the telegram to the physician notwithstanding by the exercise of reasonable diligence upon its part it could have done so, and that had said message been delivered the physician could and would have attended plaintiff's wife and given her necessary and proper medical attention; that plaintiff's wife was suffering intensely at the time the message was delivered to defendant's agent for transmission, and continued to suffer until her death, which occurred during the night. He also alleged facts to show his damages in the way of mental anguish, and the payment of twenty-five cents for sending the message.

By supplemental petition he further alleged that "If it should appear upon the trial of the cause that at the time said message was received at Crosby it had no employe or agent there, or that some other person than defendant's agent received said message at Crosby, or that defendant's office at Crosby was then closed, under any reasonable rule or regulation or otherwise when said message was wired to Crosby, or if it should appear upon the trial that said message was not actually transmitted to Crosby, or was not transmitted from Sheldon, then in that event defendant should not be heard to defend this suit by reason of any such fact, because defendant is estopped therefrom by reason of having made the special contract alleged in plaintiff's original petition in this suit for the actual and prompt transmission and delivery to Dr. Culter of said message at the time defendant received the same on the evening or night of March 23, 1906, when it agreed, through its agent, Thompson, to promptly convey and deliver said message to Dr. Culter at Crosby at once upon its receipt at Sheldon."

Defendant answered by general denial and by special plea as follows: "Further answering, defendant says that on and prior to the 23d of March, 1906, defendant had established at its office in Crosby, Texas, the place to which plaintiff's alleged message was addressed, reasonable office hours within which it undertook to and did transact business for the public; that its said office hours were, on said day and theretofore, as follows: From 7 a. m. to 7 p. m., said hours being established daily office hours except for Sunday; that said established office hours at said place were reasonable and adequate for the conduct of defendant's business for the public; that outside of said office hours defendant did not undertake, and owed no duty to the public to accept or receive for transmission and deliver telegrams for the public

at said place; that the defendant company had no agent or operator in its employ at said place after the hour of 7 p. m. on any day, and at said hour, 7 p. m., defendant's office at Crosby, Texas, was closed to the public; that defendant owed plaintiff no duty to receive and deliver at Crosby, Texas, on the night of March 23d, the message alleged; that if said message was received at Crosby, Texas, as alleged by plaintiff, it was received after defendant's office at said place had closed, under its reasonable rules and regulations; that if said message was received and taken from the wire at Crosby, Texas, such act was not the act of defendant, but of some person not in the employ of defendant, and not authorized by it to receive messages on its account; that the defendant had no means, and did not undertake to have facilities for the delivery of messages for the public at Crosby, Texas, after the hour of 7 p. m.; that the defendant is not liable to plaintiff for the act of omission of such person as may have received said message after said hour at Crosby, Texas." The case was tried before a jury and, upon a verdict and judgment in favor of the defendant, plaintiff Starkey appeals.

The evidence conclusively shows, we think, that the message was not tendered to appellee's agent at Sheldon for transmission until after seven o'clock at night, and that under the rules and regulations adopted by appellee for the conduct of its business at both Sheldon and Crosby, and which rule we find from the evidence to be reasonable, its offices at said places were not open for the transmission or receipt of telegraphic messages at night after that hour, nor did appellee owe any duty to appellant, nor to the public, to accept for transmission, or to make delivery of telegrams after that hour. It is shown, however, that the message was transmitted from Sheldon within a reasonable time after it was tendered, and that it was taken off the wire at Crosby by an agent of the railroad company at Crosby, who acted without authority from appellee in so doing, but that the message was not delivered to the addressee.

While the testimony was conflicting as to whether a special contract in reference to the immediate transmission of the message in question was made between the agent of appellant and appellee, there was ample evidence to warrant the jury in finding, and in deference to the verdict we find, that no such contract was made. We also find that appellant paid to appellee's agent twenty-five cents to cover the cost of sending the message, but that this sum was later, on the same night, refunded to appellant. Our findings of fact necessarily adversely disposes of appellant's first assignment of error, wherein he complains that the court should have submitted to the jury in the general charge whether the message was received by appellee's agent at Sheldon in time to have been transmitted to Crosby before seven o'clock.

Appellant's second, third, fourth and fifth assignments, which are grouped, are not followed by any proper statement as required by the rules.

This is also true of the seventh, eighth, ninth and tenth assignments, while the fourteenth is not supported by a statement of any kind, and they are not therefore entitled to and will not receive consideration.

Appellant's sixth assignment of error is as follows: "The court erred in paragraph one of its general charge, to the prejudice of plaintiff, in that it absolutely denied this plaintiff any recovery unless the agreement was to deliver the message immediately, whereas the case made by the plaintiff's petition, as also by the evidence, was not exclusively grounded or based upon the contract to deliver the message immediately, but also based and grounded upon the contract to deliver promptly or with reasonable dispatch, and said paragraph one of the court's charge repeatedly emphasizes that it was necessary for the agreement to have been for an 'immediate' delivery in order that plaintiff should recover. at all." Plaintiff alleged ·that the contract made with the defendant's agent at Sheldon was a "special contract" to "promptly convey and deliver the message . . . at once," and that "the defendant promised to convey and deliver said message . . . within a reasonable time, . . . and plaintiff says that a reasonable time for such delivery under the circumstances was only an immediate and very prompt delivery thereof."

We think that under these allegations the court did not err in restricting plaintiff's right to. recover for a breach of a special contract for immediate transmission and delivery of the message, and the assignment is overruled.

The twelfth and thirteenth assignments are based upon the action of the court in sustaining objections to certain answers contained in the deposition of the witness, Dr. Culter. The interrogatories are set out in the assignments, but the answers objected to are not shown either in the assignment or the subjoined statement, nor is there any reference to bills of exception taken to the ruling of the trial court in sustaining the objection. Under repeated decisions of our appellate courts the assignments can not be considered. Herring v. Mason, 17 Texas Civ. App., 559, and authorities there cited.

No reversible error appearing, the judgment of the trial court is affirmed.

*Affirmed.*